The order of the bankruptcy court will be affirmed.

Shirley **BROWN** and Dorothy **Black**, et al., Appellees,

v.

**ECKERD DRUGS, INC., a corporation now merged with Jack Eckerd Corporation, etc., et al., Appellants.**

No. 79–1821.

United States Court of Appeals, Fourth Circuit.

Aug. 31, 1982.

### ORDER

MURNAGHAN, Circuit Judge.

The Supreme Court's order, 457 U.S. 1128, 102 S.Ct. 2952, 73 L.Ed.2d 1345, having vacated the judgment of this court, 663 F.2d 1268, with costs,

IT IS ORDERED that the judgment of the district court is vacated and that the cause is remanded to the United States District Court for the Western District of North Carolina, for further consideration in light of *General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

With the concurrences of BUTZNER and DONALD RUSSELL, Circuit Judges.

**UNITED STATES of America, Appellee,**

v.

**William A. BARRINGER, Appellant.**

Nos. 82–5017(L), 82–6159.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 6, 1982.

Decided June 16, 1983.

---

Barbara H. Fleisher, Charleston, W.Va. (Stanley E. Preiser, Frederick D. Fahrenz, Preiser & Wilson, Charleston, W.Va., on brief), for appellant.

Mary Stanley Feinberg, Asst. U.S. Atty., Charleston, W.Va. (David A. Faber, U.S. Atty., Wayne A. Rich, Jr., Asst. U.S. Atty., Charleston, W.Va., on brief), for appellee.

Before WIDENER and HALL, Circuit Judges, and BLACK *, District Judge.

WALTER E. BLACK, Jr., District Judge.

William A. Barringer appeals from a judgment of conviction on one count of conspiracy, 18 U.S.C. § 371, and seven counts of mail fraud, 18 U.S.C. § 1341, following a trial by jury after the court had dismissed 18 other counts.

At the time of sentencing, on November 16, 1981, the court imposed on Barringer a sentence of three years of imprisonment, a fine of $17,000, costs of prosecution of $3,100, and five years on probation to commence on the date of sentencing. As a special condition of probation, the court ordered Barringer to establish a trust fund to the extent of his available assets to make restitution to the extent of recovery against him in civil litigation by the parties aggrieved as a result of the activities described in the conspiracy count of the indictment. The court, by its order, directed that Barringer set aside $2,200,000 in this manner, and later reduced the amount to be placed in the fund by $356,520, representing the value of real estate held by Barringer

---

* The Honorable Walter E. Black, Jr., United States District Judge for the District of Maryland, sitting by designation.

and his wife, as tenants by the entireties. The trust fund has never been fully funded due to an intervening divorce action. Civil litigation has been instituted by Barringer's former corporate employer and related corporations as the alleged parties aggrieved by the conspiracy for which Barringer was convicted.

Barringer subsequently filed a motion for correction of sentence, alleging that the special condition of probation pertaining to restitution was illegal and unlawful. The court denied the motion, and Barringer appealed from that order as well as from the judgment and order imposing sentence.

## I.

The indictment involved here charged Barringer and his alleged co-conspirator, John S. Routh, Jr., with conspiracy to violate the mail fraud statute by using the mails in furtherance of a scheme to defraud Barringer's corporate employer of $2,250,000 and its right to his loyal, honest, faithful, and lawful service as its employee, free from deceit. The general purpose of the conspiracy was for Barringer to use the mails to receive "commissions" or "kickbacks" from Routh. Routh pleaded guilty to the conspiracy charge and testified against Barringer at the trial.

Barringer raises the following issues on appeal from the judgment of conviction:

(1) An employee of a private corporation cannot be convicted of using the mail to defraud his employer, despite the clear authority of this court to the contrary in *United States v. Mandel,* 591 F.2d 1347 (4th Cir.), 602 F.2d 653 (4th Cir.) (*en banc*), 609 F.2d 1076 (4th Cir.1979) (order), *cert. denied,* 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980), and *United States v. Shamy,* 656 F.2d 951 (4th Cir.1981), *cert. denied,* 455 U.S. 939, 102 S.Ct. 1429, 71 L.Ed.2d 649 (1982), and the supportive authority from the Seventh Circuit in *United States v. Bryza,* 522 F.2d 414 (7th Cir.1975), *cert. denied,* 426 U.S. 912, 96 S.Ct. 2237, 48 L.Ed.2d 837 (1976); *United States v. Bush,* 522 F.2d 641 (7th Cir.1975), *cert. denied,* 424 U.S. 977, 96 S.Ct. 1484, 47 L.Ed.2d 748 (1976), and *United States v. Lea,* 618 F.2d 426 (7th Cir.), *cert. denied,* 449 U.S. 823, 101 S.Ct. 82, 66 L.Ed.2d 25 (1980).

(2) There was no evidence to show any intent to defraud on Barringer's part, nor any factual basis from which intent to defraud could be inferred by the jury, nor any evidence of actual harm to the corporate employer, despite clearly sufficient evidence to the contrary in the record.

(3) There was no evidence of a common intent to defraud on the part of two or more persons as a basis for the conspiracy conviction, despite clearly sufficient evidence to the contrary on this issue as well.

(4) The introduction of evidence of certain transactions which were not the subject of any substantive counts of mail fraud, despite being properly admissible as either part of the conspiracy or as evidence of similar acts as proof of motive, intent, or plan under Rule 404(b) of the Federal Rules of Evidence.

We find no merit in any of these contentions and affirm the judgment of the district court as to each of these issues.

## II.

The district judge has crafted a very carefully structured method of restitution as part of the sentence in this case, designed to recompense the victims of the conspiracy, primarily Barringer's corporate employer.[1] The vehicle for this restitution was to be a trust fund created pursuant to the court's order. Certain safeguards for Barringer were included in the requirements established by the Court, including a limitation on restitution by the extent of Barringer's available assets, a provision for disbursement of a substantial portion of the income during the existence of the trust fund, and a provision for the ultimate return to Barringer of any assets not required

---

**1.** The Victim and Witness Protection Act of 1982, Pub.L. No. 97–291, 96 Stat. 1248 (October 12, 1982), is not applicable to this case, the restitution provisions thereof applying only to offenses occurring on or after January 1, 1983.

to satisfy the liability to the victims as determined in the related civil litigation.

The district court's authority to place a convicted defendant on probation is found in the Federal Probation Act, 18 U.S.C. § 3651, which provides, in relevant part, as follows:

> Upon entering a judgment of conviction of any offense not punishable by death or life imprisonment, any court having jurisdiction to try offenses against the United States when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may suspend the imposition or execution of sentence and place the defendant on probation for such period and upon such terms and conditions as the court deems best.
>
>      \*      \*      \*      \*      \*      \*
>
> While on probation and among the conditions thereof, the defendant ... [m]ay be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had. . . .

Barringer attacks the court's provisions for restitution on three grounds:

(1) there are no "aggrieved parties" or any "actual damages or loss" within the meaning of 18 U.S.C. § 3651;

(2) the amount of restitution was based on an implied finding that the Government had proven each and every overt act in the conspiracy count of the indictment; and

(3) the restitution requirement may extend beyond the period of probation.

We find no merit in any of these contentions.

■ First, Barringer's argument that there are no "aggrieved parties" or any "actual damages or loss" within the meaning of the statute ignores the fact that the special condition of probation imposed by the court plainly intended that no restitution be made until civil litigation is concluded. A judgment in the civil litigation in favor of Barringer's former employer will establish this employer as an aggrieved party and will also establish the amount of actual damages or loss. In the event of a judgment in favor of Barringer, the trust is to be terminated and all assets turned over to him. These provisions are consistent with the provisions of the statute.

In *United States v. Taylor,* 305 F.2d 183 (4th Cir.1962), this court furnished guidance in this area which has been followed by the district court in this case. In *Taylor,* the defendant pleaded guilty to two counts of failure to file federal income tax returns for 1956 and 1957, and was found guilty by a jury of knowingly attempting to evade a large portion of his federal income tax for 1955. The defendant was placed on probation subject to the special condition that he pay the sum of $32,210.40 to the Internal Revenue Service. This court held that the district court had exceeded its authority, since the amount of restitution was based on the testimony of the internal revenue agent, which did not determine the defendant's total tax liability with precision and clarity. The court made it clear that the payment of restitution could only be made after the amounts "are finally and legally determined" during the probationary period. 305 F.2d at 187. The district court's use of a judgment in the civil litigation as the measure of the amount of restitution fully meets this court's requirements of a formal determination.

The district court's use of the trust fund as a vehicle for restitution is consistent with the purposes of the statute. In *Taylor,* this court recognized the use of an escrow fund as appropriate under such circumstances. 305 F.2d at 188. In *United States v. Tiler,* 602 F.2d 30, 34 (2d Cir.1979), the Second Circuit specifically upheld the use of an escrow fund as a condition of probation in a conspiracy conviction, citing *Taylor.* The court required the deposit of $100,000 with the clerk of the court to be applied against the assessed damages to be determined through the regular processes

**64**

of the Customs Service.[2] The court specifically differentiated this provision for an "explicitly conditional deposit" from any order for payment to an " 'aggrieved party' " prior to final determination. *Id.*

■ Second, Barringer attacks the amount of the trust fund ordered by the court as being based on the amounts alleged in the overt acts in the conspiracy count of the indictment. Actually the amount mandated by the court was ultimately reduced to approximately $1,800,000, the amount of Barringer's assets as reflected in the information furnished by him to the Probation Department. It was reasonable for the court to insure that Barringer's substantial assets not be wasted, transferred or moved beyond federal court jurisdiction and out of the reach of his potential creditors, particularly in light of the fact that at the time of sentencing a substantial portion of his assets was deposited in the British West Indies. In any event, Barringer stipulated at trial that he received and spent $2,250,000 in his activities which were the subject of the indictment. The factual basis for this attack on the restitution condition is in error.

■ Third, Barringer attacks the restitution condition on the basis that it may outlive the five-year probation period or, indeed, his own lifetime. While the final determination of the amount of restitution may be substantially delayed because it depends on divorce proceedings as well as the civil litigation instituted by Barringer's former employer, it is unlikely that it cannot be completed by November 16, 1986, the expiration date for the period of probation. In any event, the raising of these legal issues is premature, and they can be faced by the district court if the civil litigation is still pending on November 16, 1986, or if Barringer should die prior to that date. Barringer or his personal representatives should raise these issues at the appropriate time in the unlikely event that the amount

of restitution has not long since been finally determined.

■ Barringer also contests the provision in the sentencing order that provides for recovery from the trust fund by any joint tortfeasor involved in the criminal activities who seeks contribution from Barringer. The law of torts is clear with respect to contribution among joint tortfeasors:

> The right of contribution exists only in favor of a tortfeasor who has discharged the entire claim for the harm by paying more than his equitable share of the common liability, and is limited to the amount paid by him in excess of his share. No tortfeasor can be required to make contribution beyond his own equitable share of the liability.

*Restatement (Second) of Torts,* § 886A(2) (1979).

This provision as to joint tortfeasors is in no way inconsistent with the provisions of 18 U.S.C. § 3651, since in the event of its ever becoming operative, restitution will have already been made to the "aggrieved parties" to that extent.

Accordingly, for the foregoing reasons, the district court's order concerning the establishment of a trust fund as a condition of probation is hereby affirmed.

### III.

In summary, the conviction of the defendant by the district court on eight counts of the indictment and the district court's judgment and probation/commitment order are hereby affirmed.

AFFIRMED.

---

**2.** It should be noted that the Customs Service ultimately assessed damages and penalties in excess of $2,500,000. *See* 602 F.2d at 33.