821 P.2d 194

**STATE of Arizona, Appellee,**

v.

**Edward INIGUEZ, Jr., Appellant.**

**No. 1 CA–CR 89–465.**

Court of Appeals of Arizona,
Division 1, Department A.

April 11, 1991.

Review Denied Jan. 7, 1992.*

---

* Gordon, C.J., of the Supreme Court, did not participate in the determination of this matter.

Cameron, J., of the Supreme Court, voted to grant review.

**534**

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, and Mark E. Dwyer, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Spencer D. Heffel, Deputy Public Defender, Phoenix, for appellant.

## OPINION

LANKFORD, Judge.

Edward Iniguez, Jr. timely appeals from a restitution order requiring him to pay $50,000.00 of restitution as a condition of probation. The restitution order followed a settlement of a civil action between defendant and his victims. The defendant's insurer paid a substantial sum and in exchange the victims executed a release of all claims.

This appeal requires us to decide the effect of a settlement payment in a civil damages action upon restitution in a criminal case.

### I.

In July of 1987, Iniguez was driving his vehicle while intoxicated and collided with another vehicle, the driver of which suffered severe personal injuries. Iniguez' tested blood-alcohol content after the collision was .17 percent. He was indicted for aggravated assault, a class three felony.

On March 8, 1988, Iniguez pled no contest to that charge. The superior court sentenced him to five years probation with incarceration in the Maricopa County Jail for one year as a condition of probation. In addition to the other terms and conditions of probation, he was ordered to pay restitution in an amount not to exceed $200,000.00, the exact amount to be determined at a later restitution hearing.

The injured driver and his wife then instituted a civil action against Edward Iniguez, Jr., against his mother and father, and against Principal Casualty Insurance Company. The parties eventually settled this action. Iniguez and Principal Casualty paid $150,000.00 to the plaintiffs in exchange for release of all claims.

The release recited that coverage under another insurance policy with a $50,000.00 liability limit would be litigated in a declaratory judgment action involving Principal Casualty and Iniguez. It further stated that if the insurer prevailed, then Iniguez would bear no further liability. If Principal Casualty did not prevail, then the $50,000.00 would be paid to the plaintiffs.

While it is clear that plaintiffs have received $150,000.00, the record does not reveal whether the additional $50,000.00 has been or will be paid. The record does show that the victims' attorney advised the probation officer that they did not wish to pursue criminal restitution from the defendant.

After the settlement agreement was reached, the court conducted a restitution hearing. No evidence was presented of the victims' total losses. The only evidence of damages was contained in a year-old probation report which indicated then-existing medical bills of $120,879.56.

The superior court ordered the defendant to pay restitution of $50,000.00 payable at the rate of $200.00 per month beginning October 1, 1989.[1]

The defendant argues on appeal that the release barred the court from ordering *any* restitution. The defendant also argues that because the amount of $150,000.00 set forth in the release was the only evidence of the victim's total economic loss, the court had no basis to award another $50,000.00 in restitution.

The state responds that the civil settlement has no effect on the court's power to impose restitution. Accordingly, the court should have ordered payment of the full amount of economic loss without regard to the amount paid in the civil settlement.

In the alternative, the state contends that a civil settlement can be offset against a restitution order only to the extent that the settlement represents damages for "economic loss." It further contends that the entire civil settlement in this case must be treated as noneconomic damages such as pain and suffering. Thus, both of the state's arguments conclude that the settlement has no effect on restitution.

## II.

Several statutes govern payment of restitution by a criminal defendant.

A.R.S. § 13–603(C) requires the court to order payment of restitution by the offender to the victim of a crime. *State v. Wideman*, 165 Ariz. 364, 367–68, 798 P.2d 1373, 1376–77 (App.1990); *State v. Dampier*, 157 Ariz. 222, 225, 756 P.2d 319, 322 (App. 1988). A.R.S. § 13–603(C) provides:[2]

> If a person is convicted of an offense, the court shall require the convicted person to make restitution to the person who is the victim of the crime or to the immediate family of the victim if the victim has died, *in the full amount of the economic loss* as determined by the court and in the manner as determined by the court pursuant to chapter 8 of this title....

(Emphasis added).

Under A.R.S. § 13–105.11, economic loss is defined as:

> [A]ny loss incurred by a person as a result of the commission of an offense. Economic loss includes lost interest, lost earnings and other losses which would not have been incurred but for the offense. *Economic loss does not include*

---

1. At the restitution hearing, the court took the matter under advisement but stated that it was going to order $50,000.00 restitution and would "take into account the possible litigation involved in the declaratory judgment." However, the court's later minute entry order which ordered the $50,000.00 restitution made no reference to the declaratory judgment action.

2. Restitution also must be ordered as a condition of probation. A.R.S. § 13–901(A); *State v. Merrill*, 136 Ariz. 300, 302, 665 P.2d 1022, 1024 (App.1983).

losses incurred by the convicted person, *damages for pain and suffering, punitive damages or consequential damages.*

(Emphasis added).

These statutes do not instruct the courts as to the effect on restitution of compensation of the victim's losses in whole or in part by insurance payments. However, A.R.S. § 13–807 addresses a related subject. That statute provides that an order of restitution does not preclude the victim from bringing a separate civil action and proving "damages in excess of the amount of the restitution order." A.R.S. § 13–807 provides in pertinent part:

An order of restitution in favor of a person does not preclude that person from bringing a separate civil action and proving in that action damages in excess of the amount of the restitution order.

While § 13–807 credits the restitution amount against any civil damage award, that provision does not address the converse situation: must a civil damage award be credited against the restitution amount?

■ Because the statutes do not expressly address the problem at hand, we must attempt to determine the result intended by the Legislature. The cardinal rule in statutory interpretation is adherence to legislative intent. *Calvert v. Farmers Ins. Co.*, 144 Ariz. 291, 697 P.2d 684 (1985).

■ To determine legislative intent, we look first to the statutory language. *Kriz v. Buckeye Petroleum Co., Inc.*, 145 Ariz. 374, 377, 701 P.2d 1182, 1185 (1985). We may also examine the subject matter, effects, consequences, reason and spirit of the statutes. *Id.*

■ One of the purposes of mandatory restitution is reparation to the victim. *State v. Moore*, 156 Ariz. 566, 567, 754 P.2d 293, 294 (1988). The goal is to make the victim whole. *State v. Howard*, 163 Ariz. 47, 51, 785 P.2d 1235, 1239 (App.1989). Although reparation is one purpose of restitu-

tion, the goals and methods of restitution in a criminal case differ from those of damages in a civil action. *State v. Pearce*, 156 Ariz. 287, 289, 751 P.2d 603, 605 (App. 1988); *State v. Whitney*, 151 Ariz. 113, 114, 726 P.2d 210, 211 (App.1986).

■ Another goal of restitution is rehabilitation of the convicted person. Rule 27.1, Arizona Rules of Criminal Procedure, 17 A.R.S.; *State v. Moore*, 156 Ariz. at 567, 754 P.2d at 294; *State v. Merrill*, 136 Ariz. at 301, 665 P.2d at 1023. Such a requirement forces an offender "to recognize the specific consequences of his criminal activity and accept responsibility for those consequences." *Id.* at 302, 665 P.2d at 1024; *State v. Cummings*, 120 Ariz. 69, 583 P.2d 1389 (App.1978).

■ Restitution and civil damages are independent under Arizona law, and the state's power to order restitution does not bar a victim from seeking damages in a civil action. A.R.S. § 13–807; *Pearce*, 156 Ariz. at 289, 751 P.2d at 605. We believe the converse is also often true. Because restitution also promotes the rehabilitative purpose of the criminal law, and because civil damage payments may not be fully compensatory, the court is not automatically foreclosed from ordering some restitution simply because the victim has received some compensation as a result of a civil action. *See Shenah v. Henderson*, 106 Ariz. 399, 476 P.2d 854 (1970) (under prior law restitution was ordered to be paid in addition to insurance payment, apparently by defendant's automobile liability insurer). *Accord People v. Clifton*, 172 Cal.App.3d 1165, 219 Cal.Rptr. 904 (1985). Moreover, the distinction between civil damages and restitution means that the victim's release of *civil* liability does not prevent the state from ordering the *criminal* law remedy of restitution. The victim's release of his or her claims does not encompass restitution: restitution is not a claim which belongs to the victim, but a remedial measure that the court is statutorily obligated to employ.[3]

---

**3.** We also note that because the state is not a party to the release, the state is not bound by the release.

■ We therefore reject the defendant's contention that the settlement bars any restitution order.

### III.

■ The more difficult question is the amount of restitution that is appropriate when the victim has already received some compensation.

According to the state, the courts need not coordinate restitution with civil settlement. The state rests its position on A.R.S. § 13–603(C), which directs the court to order restitution in the "full amount of the economic loss." The state argues that because the statute does not direct restitution in the full amount of *"uncompensated* economic loss," the legislature intended to forbid the courts from considering compensation other than restitution payments. The state's theory thus would allow a victim to receive compensation twice for the same loss: once from insurance or some other source, and again from restitution payments.

The defendant alleges that the only evidence of the victim's full economic loss is the settlement agreement which provided payment of $150,000.00. The defendant argues that the victim was fully compensated and that the court lacked a basis for awarding an additional $50,000.00 of restitution.

We cannot agree with either the state or the defendant. When the restitution statutes are construed together in light of their purposes it appears that the Legislature intended that the courts coordinate criminal restitution and civil damage recoveries. The Legislature intended to fully compensate the victim for economic loss. However, the statutory scheme contains no hint that the Legislature intended to go beyond full compensation and confer a windfall. Because a primary purpose of restitution is to make the victim whole, and the other aim of restitution is rehabilitative rather than punitive, payment beyond that necessary to compensate does not serve the Legislature's purposes.[4]

A.R.S. § 13–807 supports this conclusion. That statute limits civil recovery to "damages *in excess* of the amount of the restitution order." (Emphasis added). This provision reflects the Legislature's intention to avoid windfalls and coordinate the criminal and civil compensation schemes.

Division Two of this court reached the same conclusion in *State v. Howard,* 163 Ariz. 47, 785 P.2d 1235 (App.1989). The court rejected the state's cross-appeal and affirmed a reduction of restitution based on a $100,000.00 settlement payment received by the victim's family in a civil wrongful death action. The court noted that "the purpose of mandatory restitution is to make the victim whole, not to punish.... [T]he net effect of cross-appellants' request would be to award the victim an amount in excess of that intended by the legislature." 163 Ariz. at 51, 785 P.2d at 1239.[5] In short, although the court must consider all economic losses of the victim under A.R.S. § 13–804(B), and must require the offender to make restitution in the full amount of economic loss under A.R.S. § 13–603(C), it should not order restitution exceeding the victim's actual economic losses after crediting payments received by the victim outside the criminal proceeding. *See State v. Ferguson,* 165 Ariz. 275, 798 P.2d 413 (App.1990) (trial court erred by failing to reduce restitution amount by value of stolen property returned to owners).

---

**4.** Fines may be imposed to fulfill a legislative desire to inflict financial punishment. *See, e.g.,* A.R.S. § 13–801 (defendant may be fined for a misdemeanor).

**5.** Other jurisdictions have reached the same conclusion on this issue. Federal courts have also fashioned restitution orders made pursuant to the Federal Probation Act, 18 U.S.C. § 3651, so as to account for civil liability awards. *See United States v. Barringer,* 712 F.2d 60 (4th Cir.1983) (court ordered defendant to pay restitution in the amount of $100,000.00 to be placed in a fund subject to final determination of damages in civil lawsuit against defendant); *United States v. Tiler,* 602 F.2d 30 (2d Cir.1979) (defendant ordered to pay $100,000.00 restitution into escrow fund pending determination of full amount of remaining damages to government after considering compensation to government from third party sources). *See also People v. Stacy,* 64 Ill.App.2d 157, 212 N.E.2d 286 (1965) (court may order set-off in a criminal restitution order against civil damage award).

Not all payments received by the victim are to be credited against the restitution amount, however. A civil damage recovery may include compensation for pain and suffering and other items of loss not compensable by restitution, which pays only for "economic loss." A.R.S. § 13–105.11. In this case, the evidence revealed economic loss of $120,879.56 and a settlement payment of $150,000.00. Because some of the settlement amount may have compensated non-economic loss, we cannot agree with defendant that the settlement necessarily paid the full economic loss and precluded any restitution.

### IV.

■ We must next decide whether the superior court properly ordered that this defendant pay $50,000.00 in restitution for the victim's otherwise uncompensated economic loss. A.R.S. § 13–105 broadly defines "economic loss." Economic loss includes medical expenses and lost earnings of the victim. However, the statute specifically excludes damages for pain and suffering, punitive damages and consequential damages from the category of "economic loss."

The only evidence of economic loss in the record is contained in the presentence report. The report states that as of March 17, 1989—nearly one year prior to the restitution hearing—the victim's medical bills totalled $120,879.56. There is no other evidence in the record of medical expenses incurred after that date, and no evidence of lost earnings or other recoverable expenses. However, the record indicates that as of the date of the presentence investigation, the victim was in a comatose state and was not expected to recover.

While we surmise that the victim's economic losses in this case exceeded $200,-000.00, this is a matter for proof and not speculation.[6] The record simply does not support a finding that economic loss was $200,000 or more. The court's restitution

award therefore cannot be sustained on the theory that the $50,000 award was the uncompensated loss remaining after the court credited the $150,000 insurance payment.

■ We also cannot speculate on the apportionment of the $150,000.00 settlement. In the absence of some evidence of total economic loss of the victim and factual findings by the trial court, we cannot say how much of the $150,000 paid to the victim can reasonably be attributed to non-economic loss. *See People v. Clifton,* 172 Cal.App.3d at 1168, n. 1, 219 Cal.Rptr. at 906, n. 1. We reject the state's argument that even without such evidence and findings, the entire amount should be treated as payment for excludable damages such as pain and suffering. However, we agree with the idea behind the state's argument: compensation for losses not subject to restitution need not be credited against the restitution amount.

■ The possibility that the second insurance policy would pay another $50,-000.00 to the victim further complicates this matter. If this sum is paid, then the restitution order can be adjusted so that the combined restitution and settlement amounts do not exceed the victim's economic loss. *See People v. Stacy,* 212 N.E.2d at 288 (if victim recovers civil damage verdict, court may later consider a set-off in restitution order against the damage award but should not anticipate award). Alternatively, an escrow fund may be utilized. See n. 5, *supra.*

■ When an appellate court cannot determine the basis of the restitution order from the record, the proper remedy is to vacate that portion of the sentence, and remand to the trial court to reconsider the propriety of the restitution order and to specify the basis for its determination. *See United States v. Lemire,* 720 F.2d 1327 (D.D.C.1983), *cert. denied,* 467 U.S. 1226, 104 S.Ct. 2678, 81 L.Ed.2d 874 (1984); *United States v. Johnson,* 700 F.2d 699

---

**6.** This case is therefore distinguishable from *Shenah v. Henderson,* 106 Ariz. at 401, 476 P.2d at 856, in which the Supreme Court held that "the trial judge had sufficient facts before him

to warrant imposing the reparation of $2500" in addition to any sums paid under an automobile insurance policy.

(11th Cir.1983); *United States v. Brown,* 699 F.2d 704 (5th Cir.1983); *State v. Fader,* 358 N.W.2d 42 (Minn.1984).

■ On remand, the trial court may consider such evidence as is necessary to establish the amount of the victim's economic loss. The court may also consider evidence which may enable it to determine the extent to which a portion of the insurance payment should be attributed to compensation for non-economic loss, and thus should not be credited against the amount of restitution.

For the foregoing reasons, the restitution order is vacated and remanded to the superior court for further proceedings consistent with this decision.

CONTRERAS, J., concurs.

TAYLOR, Presiding Judge, concurring.

I concur fully in the analysis and conclusions of law expressed by my colleagues.

I write separately to express my perception of the lack of authority for the prosecutor to enter into a plea agreement setting a limit on the amount of restitution to be paid to the victim, and the absence of authority for the court to accept such an agreement or to order restitution of less than the full economic loss suffered by the victim as determined by the court, unless specifically authorized by the victim.

The mandate of the statute is clear. "If a person is convicted of an offense, the court *shall* require the convicted person to make restitution to the person who is the victim of the crime … *in the full amount of the economic loss* as determined by the court …". A.R.S. § 13–603(C). [Emphasis added.] In my judgment, the statute cannot be read other than that the amount of economic loss as determined by the court and the amount of restitution ordered by the court should be identical.

Further, "[t]he court shall not consider the economic circumstances of the defendant in determining the amount of restitution." A.R.S. § 13–804(C). This suggests the preclusion of negotiation.

If a restitution hearing is held, "[t]he state does not represent persons who have suffered economic loss at the hearing, but may present evidence or information relevant to the issue of restitution." A.R.S. § 13–804(F).

The statute further provides as follows:

G. After making the determinations in subsection B of this section the trial court shall enter a restitution order for each defendant which sets forth all of the following:

1. The total amount of restitution the defendant owes all persons.

2. The total amount of restitution owed to each person.

3. The manner in which the restitution is to be paid.

This order may be supported by evidence or information introduced or submitted to the court before sentencing or any evidence previously heard by the judge during the proceedings.

I find nothing in these legislative directives to suggest that the prosecutor or the court may interfere with the right of the victim to a court determination and order for the full amount of his economic loss. The danger is that the economic rights of the victim may become a bargaining chip in plea negotiations. I believe the statutes place the matter of restitution outside the parameters of plea bargaining.

I assume that a defendant may reserve in the plea agreement the right to withdraw from the agreement if the court thereafter determines that the amount of economic loss exceeds a certain figure. I believe the current plea agreement, although not couched in those terms, may be read to be given that effect. This, however, differs significantly from an arrangement wherein the defendant and the prosecutor have agreed upon a restitution limit in reaching a plea bargain and the court accepts that limit regardless of the court's subsequent determination of the economic loss to the victim. In my view, the defendant should be advised at the change of plea proceedings that the court has no alternative but to determine and to order restitution in the full amount of the economic loss to the victim.

The record herein reflects a vigorous effort on the part of the prosecution to obtain restitution for the victim up to the agreed amount. My concern is the suggestion, reflected by the current practice, that the amount of restitution may be limited by negotiations between the defendant and the prosecution.

For the foregoing reasons, I believe that upon remand the trial court should hold a restitution hearing to determine the full economic loss to the victim. The figure thus determined then becomes the amount to be ordered as restitution. If that amount exceeds $200,000.00, the defendant may either accept the higher figure or be permitted to withdraw from the plea agreement and proceed to jury trial unless the victim authorizes the court to order restitution of a lesser amount. When a restitution figure is established, credit for payments received pursuant to settlement of the civil claims should be applied as set forth in the opinion.