No. 81,288

STATE OF KANSAS, *Appellant,* v. JASON C. APPLEGATE, *Appellee.*

(976 P.2d 936)

Opinion filed March 5, 1999.

*Jared S. Maag,* assistant attorney general, argued the cause, and *Carla J. Stovall,* attorney general, was with him on the brief for appellant.

*Jeffery A. Mason,* of Vignery & Mason, L.L.C., of Goodland, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: The State appeals, claiming that the district court abused its discretion by finding that the defendant's restitution obligation under K.S.A. 21-4610(d)(1) had been satisfied by the settlement in a civil suit.

On May 25, 1996, roadway conditions were poor. Jason C. Applegate, with a blood alcohol level of greater than .08, while driving at a speed in excess of 70 mph, attempted to pass a vehicle. There were three passengers in Applegate's car: Chad S. Wolfe, Tyler J. Callicrate, and Heather M. Draper. Applegate's vehicle left the roadway into a ditch, slid on the wet grass, struck a small field entrance, became airborne, landed on its top, rolled several times,

and came to rest on its top. Applegate and Wolfe were injured. Draper and Callicrate were killed in the accident.

On September 23, 1996, Applegate pled guilty to two counts of involuntary manslaughter and one count of aggravated battery committed while driving under the influence of alcohol. On January 14, 1997, the district court sentenced Applegate to concurrent sentences of 36 months and ordered him to serve 30 days in the county jail prior to being placed on probation. The journal entry of judgment provided that restitution would be ordered in an amount agreed to by the parties or a hearing to set restitution would be set at a later date.

In February 1997, a settlement of civil tort claims against Applegate was reached. Applegate's insurance carriers agreed to pay the plaintiffs (the injured victim and the parents of the deceased victims) a specified sum on behalf of Applegate. The plaintiffs agreed to release the insurance companies and Applegate from "any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever."

On May 18, 1998, the question of restitution was heard in the criminal case. The district judge found Applegate's restitution obligation in the criminal action had been satisfied by the settlement in the civil case and refused to order further restitution. The State appeals, claiming the district court abused its discretion in finding that the settlement entered into between the victims' families and the defendant satisfied restitution in the underlying criminal matter.

The State asserts that a civil judgment does not affect the criminal court's statutory mandate to order restitution. The State concedes there is no indication that the Kansas Legislature, in enacting K.S.A. 1995 Supp. 60-4304 and K.S.A. 21-4610(d)(1), intended to allow one to exceed full compensation and reap a "windfall." The State asserts that the determination to be made in this case is not whether a windfall would occur, but how a civil judgment is credited against criminal restitution.

Applegate contends that the question is not whether restitution should have been ordered, but whether the judge abused his discretion in finding that the restitution required under K.S.A. 21-

4610(d)(1) was satisfied by the compensation the victims received in the civil action from the defendant's insurance carriers.

### Release of Claims

The first question we will consider is the effect on the criminal court of the parties' release of claims which was executed at the settlement of the civil case.

Although judges of the district court are mandated to order restitution as a condition of probation, whether a release of claims in a civil settlement precludes a restitution order in a criminal action is a question of law. An appellate court's review of questions of law is unlimited. *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1991).

The release signed by the victims in the civil action provided:

"For the Sole Consideration of One Hundred Thousand Dollars ($100,000.00), . . . the undersigned hereby release and forever discharge [Insurance Companies], Jason Applegate, and Tyler Callicrate, deceased, their heirs, executors, administrators, agents and assigns, none of whom admit any liability to the undersigned but all expressly deny any liability, from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, and particularly on account of all injuries, known and unknown, both to person and property, which have resulted or may in the future develop from an accident which occurred on or about the 25th day of May 1996, in Cheyenne County, Kansas."

The Kansas statutes mandate that in addition to any other conditions of probation, suspension of sentence, or assignment to a community correctional services program, the court is required to order the defendant to make reparation or restitution to the aggrieved party for the damage or loss caused by the defendant's crime unless the court finds compelling circumstances which would render a plan of restitution unworkable. K.S.A. 21-4610(d)(1). A judgment of restitution does not bar any subsequent civil remedy or recovery, but the amount of any restitution paid is to be set off against any subsequent civil recovery. See K.S.A. 1995 Supp. 60-4304.

Here, the release was a contract between the victims, the defendant, and the defendant's insurance companies, settling the defendant's civil liability. The State was not a party to the agreement.

A civil release of claims does not and cannot specifically preclude court-ordered restitution in a criminal case.

## Effect of Civil Settlement

The question of the effect of a civil settlement on restitution in a criminal case is an issue of first impression in Kansas.

Restitution is not merely victim compensation but also serves the functions of deterrence and rehabilitation of the guilty. *State v. Hinckley*, 13 Kan. App. 2d 417, 419, 777 P.2d 857 (1989). Restitution imposed as a condition of probation is not a legal obligation equivalent to a civil judgment, but rather an option which may be voluntarily exercised by the defendant to avoid serving an active sentence. *Church Mut. Ins. Co. v. Rison*, 16 Kan. App. 2d 315, 318, 823 P.2d 209 (1991); see K.S.A. 21-4603d. The sentencing judge has considerable discretion in determining the amount of restitution, but the court must, pursuant to K.S.A. 21-4610(d)(1), order restitution for the offense of conviction. *State v. Ball*, 255 Kan. 694, 701, 877 P.2d 955 (1994).

While K.S.A. 1995 Supp. 60-4304(b) credits the restitution amount against any civil damage award, the statute does not address the converse question of whether a civil damage award may or must be credited against the restitution ordered in a criminal proceeding.

Both parties rely on *State v. Iniguez*, 169 Ariz. 533, 821 P.2d 194 (1991), in support of their respective positions regarding the effect of a civil settlement on criminal restitution. The Arizona statutes applicable in the *Iniguez* case are similar to the Kansas statutes in that, in the usual case, restitution is a mandatory condition of probation, and restitution ordered in criminal court is an offset against any subsequent civil recovery by the victim against the defendant. See Ariz. Rev. Stat. Ann. § 13-603 (1989); Ariz. Rev. Stat. Ann. § 13-804 (1989); Ariz. Rev. Stat. Ann. § 13-807 (1989).

The *Iniguez* court considered the purpose of restitution to determine whether a civil recovery may be applied to the defendant's restitution requirement. The court concluded that, although reparation is one purpose of restitution, the goals and methods of restitution in a criminal case differ from those of damages in a civil

action. 169 Ariz. at 536. *Iniguez* pointed out that one goal of restitution is rehabilitation of the convicted person. The court stated that such a requirement forces an offender " 'to recognize the specific consequences of his criminal activity and accept responsibility for those consequences.' " 169 Ariz. at 536 (quoting *State v. Merrill*, 136 Ariz. 300, 302, 665 P.2d 1022 [1983]).

*Iniguez* concluded that restitution and civil damages are independent under Arizona law. However, because restitution promotes the rehabilitative purpose of the criminal law and because civil damage payments may not be fully compensatory, the court held that a sentencing court is not automatically foreclosed from ordering some restitution simply because the victim has received some compensation as a result of a civil action. 169 Ariz. at 536.

The *Iniguez* court next addressed the question of whether the civil judgment affects the amount of restitution in the criminal case. The court noted that the applicable Arizona statute mandates the court to order restitution in the "full amount of the economic loss." 169 Ariz. at 537 (quoting Ariz. Rev. Stat. Ann. § 13-603[C] [1989]). The State of Arizona's arguments relied on the statutory provision that the criminal court must order restitution in the full amount of the economic loss suffered by the victim and argued that the Arizona Legislature intended to forbid the courts from considering civil compensation when ordering restitution in a criminal case. The defendant argued that the victim was fully compensated by the civil settlement. 169 Ariz. at 537.

The *Iniguez* court construed the Arizona restitution statutes in light of their purposes and determined that the legislature intended that the courts coordinate restitution ordered in criminal proceedings and civil damage recoveries to fully compensate the victim for economic loss. The court determined that the Arizona legislature did not intend to go beyond full compensation to confer a windfall on the victim. The court distinguished criminal fines, which "may be imposed to fulfill a legislative desire to inflict financial punishment," from restitution, which has nonpunitive purposes. 169 Ariz. at 537 n.4. "Because a primary purpose of restitution is to make the victim whole, and the other aim of restitution is rehabilitative rather than punitive, payment beyond that necessary to compen-

sate does not serve the Legislature's purposes." 169 Ariz. at 537. The court concluded that although the sentencing court must consider all economic losses of the victim and must require the offender to make restitution to the full amount of the economic loss suffered by the victim, it should not order restitution exceeding the victim's actual economic losses after crediting payments received by the victim outside the criminal proceeding. 169 Ariz. at 537.

The procedures for determining payment and the amount of restitution vary in federal and state jurisdictions from statutes such as K.S.A. 21-4610, which provide only a general statement of the legislature's intent, to enactments such as 18 U.S.C. § 3663 (1997 Supp.), which provide a very specific statement for determining the amount and payment of restitution.

18 U.S.C. § 3663 provides, in part:

"(a)(1)(A) The court, when sentencing a defendant convicted of an offense under this title . . . may order, in addition to or, in the case of a misdemeanor, in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of such offense, or if the victim is deceased, to the victim's estate. The court may also order, if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense.

(B)(i) The court, in determining whether to order restitution under this section, shall consider—

(I) the amount of the loss sustained by each victim as a result of the offense; and

(II) the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.

(ii) To the extent that the court determines that the complication and prolongation of the sentencing process resulting from the fashioning of an order of restitution under this section outweighs the need to provide restitution to any victims, the court may decline to make such an order.

(2) For the purposes of this section, the term 'victim' means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern. In the case of a victim who is under 18 years of age, incompetent, incapacitated, or deceased, the legal guardian of the victim or representative of the victim's estate, another family member, or any other person appointed

as suitable by the court, may assume the victim's rights under this section, but in no event shall the defendant be named as such representative or guardian.

(3) The court may also order restitution in any criminal case to the extent agreed to by the parties in a plea agreement.

"(b) The order may require that such defendant—

(1) in the case of an offense resulting in damage to or loss or destruction of property of a victim of the offense—

(A) return the property to the owner of the property or someone designated by the owner; or

(B) if return of the property under subparagraph (A) is impossible, impractical, or inadequate, pay an amount equal to the greater of—

(i) the value of the property on the date of the damage, loss, or destruction, or

(ii) the value of the property on the date of sentencing, less the value (as of the date the property is returned) of any part of the property that is returned;

(2) in the case of an offense resulting in bodily injury to a victim including an offense under chapter 109A or chapter 110—

(A) pay an amount equal to the cost of necessary medical and related professional services and devices relating to physical, psychiatric, and psychological care, including nonmedical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment;

(B) pay an amount equal to the cost of necessary physical and occupational therapy and rehabilitation; and

(C) reimburse the victim for income lost by such victim as a result of such offense;

(3) in the case of an offense resulting in bodily injury also results in the death of a victim, pay an amount equal to the cost of necessary funeral and related services;

(4) in any case, reimburse the victim for lost income and necessary child care, transportation, and other expenses related to participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense; and

(5) in any case, if the victim (or if the victim is deceased, the victim's estate) consents, make restitution in services in lieu of money, or make restitution to a person or organization designated by the victim or the estate."

Restitution ordered in criminal proceedings and civil damages are separate and independent remedies under Kansas law. K.S.A. 21-4610(d)(1) provides a general statement of legislative intent, requiring the sentencing court to exercise discretion in ordering reparation or restitution to the aggrieved party for the actual damage or loss caused by the defendant's crime. In addition, the district judge must have some basis for determining the amount of dam-

ages, but the same rigidness and proof of value required in a civil action does not apply to determining restitution. *Hinckley*, 13 Kan. App. 2d at 419. The judge's order of restitution in a criminal action does not bar a victim from seeking damages in a separate civil action. Likewise, the judge, when sentencing a defendant in a criminal action, is not foreclosed from ordering restitution just because the victim has received compensation in a civil action.

In *Hinckley*, the question was whether an insurer, which had a contractual obligation to pay a sum of money to the victim that exceeded the victim's actual loss suffered, could recover a greater sum than the victim could receive as restitution. The *Hinckley* court stated that K.S.A. 21-4610(4)(a) (Ensley 1988) (now 21-4610[d][1]) provided the sentencing court discretion in ordering reparation or restitution to the aggrieved party for the damage or loss caused by the defendant's crime. It noted that the measure of reparation or restitution, pursuant to 21-4610(d)(1), is the amount required to reimburse the victim for the actual loss suffered. 13 Kan. App. 2d 417, Syl. ¶¶ 1, 2.

The *Hinckley* court determined that an insurer, which has assumed a contractual obligation to pay a sum of money to the victim that exceeds the actual loss suffered by the victim, stands in the shoes of the victim and cannot recover a greater sum than the victim could recover. 13 Kan. App. 2d 417, Syl. ¶ 3.

Did the district judge abuse his discretion in ordering that the settlement in the civil action satisfied the statutory requirement for restitution in the criminal proceeding? Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only when no reasonable person would take the view adopted by the trial court. *State v. Davidson*, 264 Kan. 44, 56, 954 P.2d 702 (1998). See *Saucedo v. Winger*, 252 Kan. 718, 850 P.2d 908 (1993), for a detailed discussion of judicial discretion.

The sentencing judge has considerable discretion in determining the amount of restitution. The measure of reparation or restitution to be ordered, pursuant to K.S.A. 21-4610(d)(1), is the amount that reimburses the victim for the actual loss suffered. Here, the parties in the civil action agreed that the sum of $100,000 paid by the

defendant's insurer satisfied all claims arising from the accident. Under these circumstances, the district judge did not abuse his discretion in finding that the settlement in the civil action satisfied the statutory requirement for restitution in the criminal proceeding.

Affirmed.