NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ADAM PAUL BLOMDAHL, *Appellant.*

No. 1 CA-CR 21-0574
FILED 11-1-2022

Appeal from the Superior Court in Maricopa County
No.  CR2016-000575-001
The Honorable Jennifer C. Ryan-Touhill, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Tucson
By Kathyrn A. Damstra
*Counsel for Appellee*

Michael J. Dew Attorney at Law, Phoenix
By Michael J. Dew
*Counsel for Appellant*

Arizona Voice for Crime Victims, Phoenix
By Thomas E. Lordan
*Counsel for Crime Victim*

_____

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge James B. Morse Jr. joined.

_____

**B R O W N**, Judge:

¶1        Adam Paul Blomdahl appeals the superior court's restitution order requiring him to pay various expenses to the victim's mother, J.G., and the Victim Compensation Bureau of Maricopa County ("VCB"). For reasons that follow, we affirm.

## BACKGROUND

¶2        In August 2016, Blomdahl was indicted on one count of first-degree murder for causing the death of J.G.'s 42-year-old daughter and two counts of aggravated assault for seriously injuring other victims. J.G. applied for and received funds from the VCB to help pay for funeral expenses, mental health treatment, and related travel costs. As a condition of the application, J.G. agreed to repay the VCB if she received any funds from a civil lawsuit or insurance reimbursement to cover expenses for which she had already been paid.

¶3        J.G. sued Blomdahl in August 2018, alleging various claims for negligence (wrongful death) and negligent infliction of emotional distress. She sought $1,000,000 in damages. In October, J.G. signed a settlement agreement and release ("Release") with Blomdahl's insurance provider in exchange for payment of $30,000. The Release stated that it covered "any and all claims for damages," and that the victim "waive[d] and assume[d] the risk" of any future damages and claims.

¶4        In 2019, a jury found Blomdahl guilty as charged. *See State v. Blomdahl*, 1 CA-CR 19-0655, 2021 WL 1184315, at *1, ¶¶ 5-6 (Ariz. App. Mar. 30, 2021) (mem. decision). The superior court sentenced him to consecutive terms of life in prison for the murder count and 12 years each for the aggravated assault counts. *Id*. at ¶ 6. The court ordered that Blomdahl pay restitution to the victims for all economic losses and that the issue would remain open for 10 years.

¶5        In June 2021, J.G. filed a motion seeking $1,224.96 in restitution for trauma counseling and related travel costs. At a status

hearing in August, Blomdahl raised concerns that the Release eliminated, in whole or in part, her right to receive criminal restitution. The superior court scheduled the matter for oral argument. J.G. filed a memorandum, which included an affidavit from the attorney who handled her civil case avowing in part there was no understanding that any portion of the settlement for J.G. was meant to include criminal restitution.

¶6         The VCB also submitted a request for restitution, seeking $10,393.55 for expenses it had paid on J.G.'s behalf. At a subsequent hearing, a VCB representative testified that victims' compensation does not cover payments for pain and suffering, and that a victim would only have to repay the VCB if funds received from a settlement covered the expenses that had been advanced to the victim. Blomdahl did not dispute the amounts requested; instead, he asserted there was insufficient evidence to determine whether the restitution sought by J.G. and the VCB had already "been paid" by the $30,000 settlement. The court continued the hearing to allow the parties to submit evidence on whether all of the $30,000 was for pain and suffering.

¶7         J.G. submitted a second memorandum, which included her own affidavit explaining her understanding that the settlement was for her pain and suffering. J.G. argued that Blomdahl now had the burden of presenting evidence to demonstrate the merit of his arguments for the right to an offset. At the October 2021 hearing, without offering any evidence, Blomdahl asserted he had made J.G. whole and thus the VCB needed to seek restitution from her because she was contractually bound to reimburse the VCB. Because J.G.'s memorandum was filed shortly before the hearing, the court told Blomdahl he could have additional time to respond. The court noted that it was inclined to agree with J.G.'s arguments and invited Blomdahl to respond to the assertion that he now had the burden to prove his right to an offset.

¶8         In his response, Blomdahl argued in part that J.G. could be seeking a double recovery. He asked for 120 days to conduct a "complete investigation" to address whether J.G. had to reimburse the VCB. Because the Release did not describe what damages the funds paid were intended to cover, and J.G.'s contract with VCB obligated J.G. to repay funds received from a civil lawsuit, Blomdahl reasoned that the VCB "must collect" from her only.

¶9         The court ordered Blomdahl to pay restitution of $1,224.96 to J.G. and $10,393.55 to the VCB, finding sufficient evidence that the settlement proceeds were "100% attributable to pain and suffering." The

court explained that based on the legal authority, affidavits, and receipts J.G. submitted, she met her burden of proof. The court rejected Blomdahl's argument that it should presume the proceeds were meant to cover J.G.'s expenses, finding that he bore the burden of proving J.G. was made whole by the settlement. The court concluded that Blomdahl provided no evidence supporting his position as to how the civil settlement should be characterized. It also found no good cause to give Blomdahl the additional 120 days he requested to investigate, noting Blomdahl based the request on speculation, he had already been given ample time to find supporting evidence, and nothing prevented him from contacting the insurance company about the nature of the settlement throughout the restitution proceeding. Blomdahl timely appealed, and we have jurisdiction under A.R.S. § 12-120.21(A)(1).

## DISCUSSION

¶10 We review restitution orders for an abuse of discretion, viewing the evidence bearing on the restitution claim in the light most favorable to sustaining the court's order. *State v. Lewis*, 222 Ariz. 321, 323-24, ¶ 5 (App. 2009). The Arizona Constitution entitles crime victims to receive prompt restitution from the person convicted of criminal conduct that caused the victim's loss or injury. Ariz. Const. art. 2, § 2.1(A)(8). The State has the burden to prove a restitution claim by a preponderance of the evidence. *State v. Quijada*, 246 Ariz. 356, 364, ¶ 22 (App. 2019). A person convicted of a criminal offense must pay restitution to any victim that has suffered an "economic loss," which includes "lost interest, lost earnings and other losses that would not have been incurred but for the offense." A.R.S. §§ 13-105(16), -603(C). Economic loss does not include "*damages for pain and suffering*, punitive damages, or consequential damages." A.R.S. § 13-105(16) (emphasis added).

¶11 Restitution is intended to provide reparation to the victim, with the hope to make the victim whole. *State v. Iniguez*, 169 Ariz. 533, 536 (App. 1991). Restitution also aims to serve as a rehabilitative tool, forcing the convicted person to recognize the specific consequences of his criminal activity, and to accept responsibility for those consequences. Ariz. R. Crim. P. 27.1; *State v. Moore*, 156 Ariz. 566, 567 (1988); *State v. Merrill*, 136 Ariz. 300, 301 (App. 1983). "[T]he goals and methods of restitution in a criminal case differ from those of damages in a civil action." *See Iniguez*, 169 Ariz. at 536.

### A.    J.G. Restitution Order

¶12        Blomdahl argues that no evidence supports the restitution order because the superior court misapplied the governing law. And given that the Release is silent on the damages it was meant to compensate, Blomdahl argues the court erred in concluding it was entirely for non-economic losses. He also contends the court's consideration of extrinsic evidence violated the parol evidence rule.

¶13        Arizona courts are not foreclosed from ordering restitution simply because a victim has received compensation in a civil action. *Iniguez*, 169 Ariz. at 536. Because civil damage payments may not be fully compensatory, a victim's release of civil liability does not prevent a restitution award in the criminal case. *Id.* Thus, when a victim who requests restitution has received a separate civil settlement, the trial court must determine what portion of the settlement, if any, covers economic losses. *Id.* at 538-39.

¶14        The primary issue presented to the superior court was whether the civil settlement paid to J.G. was for economic or non-economic damages. If a portion of the settlement was compensation for J.G.'s economic losses, the court had to ensure that she did not receive a "windfall" from Blomdahl by "double-dipping of both civil and criminal liability." *Id.* at 537. Any "economic" portion of the settlement had to be credited against the restitution order. *Id.* at 538. But if the settlement was only for pain and suffering, a "non-economic" payment, Blomdahl had no right to a credit against the amount awarded to J.G.

¶15        In its ruling, the superior court explained that after the State met its burden of proof, Blomdahl had "the burden of proving [J.G.] has already been made 'whole' by her civil settlement and is not entitled to additional funds via restitution." Blomdahl does not challenge the court's handling of the burden of proof, but even assuming the court erred, the restitution order was still supported by a preponderance of the evidence. The court did not abuse its discretion in ordering restitution because the only evidence presented supported a finding that the civil settlement was for pain and suffering.

¶16        Next, Blomdahl argues that the court's consideration of extrinsic evidence, specifically, "in the form of the personal injury attorney's affidavit, violated the parol evidence rule." Because Blomdahl failed to raise this issue in the superior court, he has waived it absent a showing of fundamental error. *State v. Escalante*, 245 Ariz. 135, 138, ¶¶ 1-2

(2018). Blomdahl does not contend that the court's consideration of the affidavit constituted fundamental error. Instead, he argues he was "taken aback" by the court's willingness to rely on the attestations in the "hearsay affidavit," and if he had known the court would base its ruling on the "one-sided opinion" he would have disputed such statements.

¶17 The court's consideration of the attorney's affidavit did not constitute error, much less fundamental error. Blomdahl was given multiple opportunities to contest the affidavit with his own evidence, but he chose not to. To the extent Blomdahl suggests that in-person testimony from the attorney was required, he does not tell us when he raised that point in the superior court. Nor does he provide legal authority supporting his contention that the parol evidence rule applies in deciding the meaning of a contract in a restitution proceeding. Thus, the court acted in its discretion in considering the affidavits submitted by J.G. and counsel in her civil case.

¶18 Finally, we also reject Blomdahl's contention that the court abused its discretion in denying his request for more time to investigate. *See State v. Barreras*, 181 Ariz. 516, 520 (1995). Blomdahl was given ample time to gather evidence and information to support his position and has made no showing of prejudice. *See id.* (noting that denial of a continuance request will be overturned only if it "substantially prejudiced" the defendant).

**B.      VCB Restitution Order**

¶19 Blomdahl argues that because J.G. was contractually liable to reimburse the VCB from the settlement proceeds, the court improperly ordered that it was his obligation, in the form of restitution. He points to her application for compensation, which stated that she would reimburse VCB for "payments from the offender . . . *for which I have already received payment from this Program*." (Emphasis added.) Between August 2016 and December 2019, the VCB provided J.G. with compensation to assist with expenses related to her daughter's burial, as well as J.G.'s mental health counseling and related travel costs. As noted, Blomdahl did not provide any evidence or facts contesting or challenging J.G.'s evidence that the settlement proceeds covered only pain and suffering. Thus, even assuming Blomdahl has standing to compel the VCB to demand repayment from J.G., nothing in the record shows J.G. breached her repayment obligation. Because J.G.'s settlement proceeds did not cover the expenses that the VCB paid on her behalf, it is not seeking repayment from J.G., which means the superior court properly concluded that the VCB's restitution claim would

have to be paid by Blomdahl.  The court did not err in ordering that he pay the VCB $10,393.55 in restitution.

## CONCLUSION

¶20          We affirm the superior court's restitution orders.

