NOT DESIGNATED FOR PUBLICATION

Nos. 121,391
121,392

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JUSTIN WARD DAY,
*Appellant*.


MEMORANDUM OPINION

Appeal from Reno District Court; JOSEPH L. MCCARVILLE III, judge. Opinion filed September 18, 2020. Affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Andrew R. Davidson*, assistant district attorney, *Keith Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before SCHROEDER, P.J., GREEN and BUSER, JJ.


PER CURIAM: Justin Day pleaded no contest to arson. The trial court placed him on probation, which it later revoked. Day now appeals the amount of his restitution and his probation revocation. Day argues that the trial court abused its discretion in ordering $99,000 in restitution and abused its discretion in revoking his probation. Because we conclude that both rulings were within the trial court's discretion, we affirm.

On April 17, 2018, Day went to Bergkamp Insurance and cancelled a policy which covered his mother's residence. That same day, he lit a sock on fire and placed it on a

cardboard box inside his mother's vacant house. When the fire incinerated the house, Day's mother was residing in an assisted living facility. The residence was part of a trust for Marion and Francis Day. Their children, Day and his sister, Danette Chermak, were secondary beneficiaries under the trust. Day and Chermak had used the house to secure a $120,000 line of credit at First National Bank and the house was subject to a $22,941 balance owed on the line of credit. This loan paid for hospice care for Day's mother. Day's mother removed him as a trustee days after the fire.

In June 2018, Day pleaded no contest to one count of arson, a severity level 6 person felony, in violation of K.S.A. 2017 Supp. 21-5812(a)(1)(A). In September 2018, the trial court sentenced Day to 24 months of probation with an underlying prison sentence of 17 months followed by 24 months of postrelease supervision. The court also ordered mental health treatment and a 60-day jail sanction as conditions of probation. In referring to Day's mental health problems, the trial court stated: "[S]o you'll have 60 days in the jail to think about the fact that you don't seem to be sorry for anything. . . ." The court warned Day that his "state of mind" had "caused some tremendous damage emotionally and financially to your family . . . ."

At a restitution hearing in October 2018, Chermak testified that she and Day were trustees for the estate which included their mother's house. Chermak testified that they took out a loan to pay for their mother's assisted living care, using that property as collateral. According to Chermak, the bank appraised the property in September 2017, and she believed the value of the house was $71,000. Chermak also testified that she researched items in the house and, based on Google and eBay searches, assigned a value of $28,000 for the personal property inside the house when it was destroyed. Chermak's victim impact statement listed the personal property without accompanying values. First National Bank filed a victim impact statement requesting $26,941.86 in restitution. The insurance policy which Day cancelled had insured the house for $122,500.

2

The court ordered restitution in the amount of $71,000 for the house and $28,000 for the personal property. In doing so, the court remarked that these were "low ball" amounts which did not account for additional expenses such as clearing the rubble from the property after the house had burned. The court also found that Chermak had "scouted around for values on eBay" to establish the reasonable fair market value of the used property, rather than rely on replacement costs of new items.

In April 2019, the State moved to revoke Day's probation, alleging that (1) he had made multiple death threats on Facebook; (2) he had made obscene threats towards his community corrections officer; (3) he had consumed alcohol; and (4) he had failed to engage in mental health treatment. At the probation violation hearing, Chermak testified that Day had posted a "hit list" on Facebook of people she knew. She reported the posts to law enforcement. The "hit list" was a list of people that Day would be willing to kill if someone paid him $3 trillion. Chermak took the threat to kill somebody seriously, testifying that she did not think Day really cared if he was paid to do it.

Detective Michael Collins of the Hutchinson Police Department testified that he spoke to Day about his Facebook posts. Collins was concerned about a particular post which showed "a picture of a 270 Winchester caliber bullet and it says one shot one kill, Ryan. You won't feel a thing . . . ." Another post that alarmed Collins read as follows:

> "[I] went to my probation officer this afternoon in hopes to screwing her silly on her desk with the door open. Instead I had to fill out paperwork and disclose what I do for a living and even though I am a private contractor for hire I still put down CIA because when they call I come. I had to put down my contact in case of an emergency Jessica Boren. I then walked down to Westphal Jewelers and made it clear she can pick out whatever she wants. I then went to Smedley's Tavern, had three stouts and a C-130 burger with fries. Highly recommend it. Then I walked to my son's house and picked up his truck. I'm now going to go to the bathroom at my place."

Day told Collins that the posts "were just humor," but agreed to calm his posts down and agreed to go to Horizons, a mental health facility. From Horizons, Day was involuntarily transported to Larned Correctional Mental Health Facility (Larned Mental Health), despite Day's objections and request for a second opinion.

Hutchinson Police Lieutenant Dustin Loepp testified that he saw Day drinking beer at a bar. Lt. Loepp was at the Silver Dollar Bar with his father in March 2019 when they spoke with Day. Loepp noted that Day was acting strangely and made Loepp and his father uncomfortable.

Day's probation officer, Jessica Boren, testified that Day had not attended his mental health treatments. According to Boren, Day had an appointment for a mental health evaluation, but he did not show up for that appointment.

The trial court then revoked Day's probation and ordered him to serve his underlying prison sentence, ruling as follows:

> "Mr. Day created quite a display at his sentencing. I imposed a 60 day sanction at that time as a condition of probation, hopefully to get Mr. Day's attention to motivate him to follow up with mental health treatment and to be conscientious about complying with his probation order and to take steps to address the things that led to his crime. It doesn't appear he's done that. I decided that we needed to invoke [K.S.A. 2018 Supp. 22-3716(c)(9)] because of public safety would be jeopardized and his welfare will not be served unless he is committed to the Secretary of Corrections. He's not capable of being supervised. He doesn't tell the truth to his ISO and he posts stuff that would be intimidating of her and we can't expect him to continue to be supervised by her. We can't change ISOs just every time he does something that's inappropriate. He's not been pursuing his mental health treatment at all. He seems to enjoy causing people to be terrorized and he's committed willful and repeated violations of his probation order; important rules that were in place to hopefully help him to conform his behavior to the law and not put people in danger. We know that he's capable of putting people in danger

4

because he burned a house down with really no reason other than just to be vindictive so the original sentence which was 18 months is ordered executed. I'm not going to modify the post release that we imposed at that time which was 24 months."

The restitution order was timely appealed and then consolidated with the revocation appeal for resolution.

*Did the Trial Court Abuse its Discretion by Ordering Day to Pay $99,000 in Restitution?*

Day requested a restitution hearing and the trial court ordered Day to pay restitution in the total amount of $99,000. On appeal, Day argues that the State failed to present sufficient evidence of the loss of the value of the house or the personal property located in the house. The State argues that the trial court's restitution order was appropriate given the evidence presented.

Questions concerning the amount of restitution are reviewed under an abuse of discretion standard. *State v. Shank*, 304 Kan. 89, 93, 369 P.3d 322 (2016). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018). The party asserting that the trial court abused its discretion bears the burden of showing such abuse of discretion. *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018).

Restitution is not merely victim compensation but also serves the functions of deterrence and rehabilitation of the guilty. *State v. Applegate*, 266 Kan. 1072, 1075, 976 P.2d 936 (1999). Restitution constitutes part of a criminal defendant's sentence. If the amount of restitution owed is not available at the initial sentencing hearing, the trial court has the authority to retain jurisdiction to determine the proper amount. The amount of restitution "can only be set by a sentencing judge with the defendant present in open

court," unless the defendant waives the right to be present. *State v. Hall*, 298 Kan. 978, 986-87, 319 P.3d 506 (2014).

K.S.A. 2017 Supp. 21-6604(b)(1) requires that any restitution ordered in a criminal case must be based on "damage or loss caused by" the crime. Thus, restitution depends upon the establishment of a causal link between the defendant's crime and the victim's damages. Restitution may be allowed for some tangential costs linked to the crime. *State v. Alcala*, 301 Kan. 832, 837-39, 348 P.3d 570 (2015).

In property crimes, Kansas courts have consistently found that "fair market value" should be used as the typical standard for calculating "loss or damage" for purposes of restitution. The fair market value of property is the price that a willing seller and a willing buyer would agree upon in an arm's-length transaction. But the restitution statute does not restrict a trial judge to award only the fair market value as restitution; restitution may include costs in addition to and other than fair market value. The appropriate amount is that amount which compensates the victim for the actual damage or loss caused by the defendant's crime. *State v. Hall*, 297 Kan. 709, 712-13, 304 P.3d 677 (2013).

Day contends that the State's evidence on the issue of restitution was only Chermak's testimony. Day argues that the trial court abused its discretion because Chermak's testimony alone is "not sufficiently reliable to yield a defensible restitution figure, as contemplated by the Kansas Supreme Court." Day cites no cases in support of this argument.

The trial court here did not abuse its discretion in relying on Chermak's testimony to set the restitution amount. Kansas law permits the owner of personal property to express an opinion as to the value of a stolen item. *State v. Hinckley*, 13 Kan. App. 2d 417, 419, 777 P.2d 857 (1989). This court has upheld restitution amounts where the owner's testimony is the only evidence in support of the amount. See *State v. Dipman*,

6

No. 118,493, 2019 WL 2063647, at *3-4 (Kan. App. 2019) (unpublished opinion) (upholding $7,725 in restitution based on victim testimony about stolen guns that were unrecovered or recovered but damaged). This court has also applied the rule beyond stolen personal property, allowing an owner's testimony to support restitution for damaged real property. *State v. Richardson*, No. 116,374, 2018 WL 559802, at *11 (Kan. App. 2018) (unpublished opinion) (upholding $400 restitution for damage to door frame).

The unusual feature of this case is that Day was also a trustee for the estate until after the fire and, thus, had knowledge of the fair market value of the house he burned. In *State v. Karlyle*, No. 108,752, 2013 WL 6389179, at *4-5 (Kan. App. 2013) (unpublished opinion), this court affirmed the trial court's restitution order based on approximate fair market values. Karlyle had stolen a cell phone, an iPod, and a handgun. The victim testified that he bought the handgun four months before the theft, paid $350, and the handgun was still in "new condition" when Karlyle stole it. 2013 WL 6389179, at *1. The trial court determined that someone would in fact pay $350 for the handgun, that is, the recent purchase price approximated fair market value. The trial court found the same was true for the iPod bought a month and a half before the theft and the cell phone in "new condition." 2013 WL 6389179, at *5. Karlyle failed to present any evidence to decrease the amount of restitution ordered or show that the original purchase price for items in "new" condition would be inappropriate. 2013 WL 6389179, at *5. The burned house in this case had a similarly ascertainable fair market value because of its appraisal less than a year before the fire.

Further, Day had as much knowledge of the fair market value of the house as Chermak. They had applied together for the loan with First National Bank, resulting in the bank appraising the house. The appraisal provides a reasonable window into the fair market value of the property. Additionally, on the same day that Day set fire to the house, he also cancelled the insurance policy which insured the house for $122,500.

7

Thus, as a fellow trustee of the property, Day had the capacity to rebut the proposed restitution amount at the evidentiary hearing. Although the rigidness and proof of value that lies in a civil damage suit does not apply in a criminal case, the court's determination of restitution must be based on reliable evidence which yields a defensible restitution figure. *State v. Hunziker*, 274 Kan. 655, 660, 56 P.3d 202 (2002). Here, the house had an insurance policy for $122,500. First National accepted the property as collateral on a $120,000 line of credit. An owner testified that the house was worth $71,000 and contained $28,000 worth of personal property inside. The court found that the evidence supported a value of at least $99,000 for all burned property. In the absence of any evidence to undermine the State's case, the trial court did not abuse its discretion by ordering restitution in the amount of $99,000.

For the preceding reasons, we affirm the trial court's order of restitution.

*Did the Trial Court Abuse Its Discretion by Revoking Day's Probation Without First Imposing Intermediate Sanctions?*

On appeal, Day argues that K.S.A. 22-3716(c) required the trial court to impose intermediate sanctions before revoking his probation. Day further argues that the court did not make sufficiently particular findings to revoke his probation under a public safety exception to intermediate sanctions. Day asserts that the court incorrectly found that his exercise of his freedom of speech to make posts on Facebook amounted to him "enjoy[ing] causing people to be terrorized." Day argues that the court erred in considering the underlying crime as evidence that Day was capable of putting people in danger.

Day also argues that his Facebook post saying that he wanted to have sex with his probation officer was not a threat but was merely a crude and inappropriate remark. Finally, Day argues that his obvious mental health needs are better addressed in the

8

community than in prison. Because the trial court set forth with particularity why revoking Day's probation was in the interest of both public safety and Day's welfare, we find Day's arguments unpersuasive.

To sustain an order revoking probation on the ground that a probationer has committed a violation of the conditions of probation, the State must establish the violation by a preponderance of the evidence. Once the State has established a violation of the conditions of probation, the decision to revoke probation rests in the sound discretion of the trial court. *State v. Gumfory*, 281 Kan. 1168, 1170, 135 P.3d 1191 (2006). A trial court abuses its discretion if its decision (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *State v. Warren*, 302 Kan. 601, 607-08, 356 P.3d 396 (2015).

To the extent that this issue requires this court to interpret and apply K.S.A. 2018 Supp. 22-3716(c), the issue is a question of law subject to unlimited review. *State v. Clapp*, 308 Kan. 976, 980, 425 P.3d 605 (2018). A trial court's discretion to revoke probation is limited by the intermediate sanctions outlined in K.S.A. 2018 Supp. 22-3716(c). When Day violated his probation, K.S.A. 2018 Supp. 22-3716(c) required a trial court to impose graduated intermediate sanctions before revoking an offender's probation. See *State v. Kurtz*, 51 Kan. App. 2d 50, 56, 340 P.3d 509 (2014).

Under these statutory limitations, the trial court generally may revoke probation and order a violator to serve the balance of his original sentence only after intermediate sanctions have been imposed. K.S.A. 2018 Supp. 22-3716(c)(2). But exceptions permit a trial court to revoke an offender's probation without having previously imposed the statutorily required sanctions. A trial court may revoke probation without having previously imposed a sanction if the court finds and sets forth with particularity the reasons for finding that the safety of members of the public will be jeopardized or that the welfare of the offender will not be served by such sanction. K.S.A. 2018 Supp. 22-

9

3716(c)(9)(A). When findings must be set forth with particularity, the findings must be distinct rather than general, with exactitude of detail. *State v. McFeeters*, 52 Kan. App. 2d 45, 48, 362 P.3d 603 (2015). Whether a trial court sufficiently particularizes its reasons as required by statute is a question of law over which appellate courts have unlimited review. 52 Kan. App. 2d at 47-48.

A trial court does not meet the particularity requirements by summarizing the defendant's criminal history, listing probation violations, and discussing how a defendant is not successfully participating in court-ordered programs. *State v. Shanholts*, No. 118,911, 2019 WL 1303165, at *4 (Kan. App. 2019) (unpublished opinion) (citing *Clapp*, 308 Kan. at 988), *rev. denied* 310 Kan. 1070 (2019). Rather, the court must do more than "simply repeat the type of reasoning historically relied upon by sentencing courts in discussing amenability to probation." *McFeeters*, 52 Kan. App. 2d at 49. "Broad generalizations that equally could apply to all similar cases are not sufficiently particularized to meet the requirements of K.S.A. 2018 Supp. 22-3716(c)(9)(A)." *State v. Duran*, 56 Kan. App. 2d 1268, 1276, 445 P.3d 761 (2019).

The trial court here made findings that were specific, rather than "general findings that could apply to any probation-revocation appeal." See *State v. Bermudez*, No. 121,104, 2020 WL 1897312, at *2 (Kan. App. 2020) (unpublished opinion). In *Bermudez*, the trial court sentenced Maikel Pomo Bermudez to 24 months of probation. Bermudez quickly violated probation in several ways, including a new charge for assault. The court revoked and reinstated Bermudez' probation. On this second try, Bermudez failed to complete inpatient treatment, failed to maintain employment, failed to follow the recommendations of a substance-abuse evaluation, failed to complete community service, and failed to report to his probation officer. At a probation revocation hearing, the court found that Bermudez was "a public safety risk, that although you have not had new convictions, there have been a multitude of problems." 2020 WL 1897312, at *2. Bermudez appealed, arguing that the trial court's comment was not particular enough.

10

This court agreed that if that comment had been all that the court had said at the hearing, Bermudez would have a point. 2020 WL 1897312, at *2. But the trial court had made additional findings and tied Bermudez' specific actions—getting into a fight at work, acting out and throwing feces in jail, refusing to tell his probation officer of his whereabouts—to threats to public safety. In other words, the court "stated *how* Bermudez would threaten public safety if allowed to continue on probation." 2020 WL 1897312, at *2.

Here, the trial court was similarly specific. The court found that Day's Facebook posts about killing people on his "hit list" were intended to terrorize the people mentioned. The court also found that Day's sexually explicit comments on Facebook about his probation officer were "obscene threats" which were "beyond the pale" rather than simply crude. In deciding whether these threats were credible, the trial court noted that Day's underlying conviction was arson, a crime with the potential to endanger human life. The court did not rely on the underlying crime to assume that Day's future behavior could lead to new charges or new probation violations. See *Duran*, 56 Kan. App. 2d at 1275 (rejecting the court's finding that Duran was "'likely to obtain new probation violation matters based on repeat behaviors'" as general supposition). Instead, the court here relied on the threats to members of the public to find that public safety would be jeopardized. The underlying crime was merely an indicator that the threats were credible.

In finding that Day's welfare would not be served by continuing probation, the trial court found that Day had not engaged in mental health treatment while on probation. The court noted that Day was initially sentenced to probation on September 21, 2018, but he waited until April 2019 to schedule an appointment. His failure to attend that appointment led the court to conclude that he was not conscientious about complying with the mental health treatment condition of his probation. Again, by itself, this would not be enough. *Duran*, 56 Kan. App. 2d at 1275 ("Findings that a defendant has repeatedly failed to complete treatment and therefore will likely continue to do so . . .

11

relies on a series of speculative and generalized predictions . . . ."). But in *Shanholts*, this court hinted at a sufficiently particularized finding.

> "[W]hile we are tempted to infer from the district court's remarks and the record in this consolidated appeal that Shanholts' welfare would not be served by imposing an intermediate sanction in the 2017 case because past sanctions imposed in the 2016 case were wholly ineffectual in encouraging her to comply with that probation, we will resist the temptation." 2019 WL 1303165, at *5.

Implicit findings by a court are insufficient when particularized findings are required by statute. *McFeeters*, 52 Kan. App. 45, Syl. ¶ 3. But here the court's findings were explicit. The court stated plainly on the record that it imposed a previous sanction specifically to motivate Day to pursue mental health treatment. But the sanction had not convinced him to address the issues that led to his crime.

The record supports the trial court's findings. A victim of the underlying crime, Day's sister and fellow estate trustee, testified that Day's threats to harm people were credible. She acknowledged that the $3 trillion price tag that Day attached to the "hit list" was not serious, but the threat itself was serious because Day did not care whether he got paid. Witness testimony supports the court's conclusion that Day made credible threats and posed a threat to public safety.

Finally, every witness addressed Day's mental health. Day's sister testified that his mental health issues were "becoming more and more." Det. Collins testified that the mental health facility in Hutchinson had Day involuntarily transported to Larned Mental Health. And Day's probation officer testified that, left to his own devices, Day had not participated in any mental health treatment since before his sentencing in this case. Substantial competent evidence supports both the court's finding that the safety of the public would be jeopardized and its finding that the welfare of the offender would not be served by an intermediate sanction and continued probation.

These were not general findings that could apply to any probation-revocation appeal. See *Bermudez*, 2020 WL 1897312, at *2. The trial court's revocation of Day's probation complied with the particularized findings requirement of K.S.A. 2018 Supp. 22-3716(c)(9)(A); *State v. Ramirez*, No. 114, 817, 2016 WL 7178464, at *5 (Kan. App. 2016) (unpublished opinion) ("[A] reason that would apply to anyone in a roughly similar situation is not particular enough to meet the statutory requirement.").

For the preceding reasons, we affirm the trial court's revocation of Day's probation.

Affirmed.