NOT DESIGNATED FOR PUBLICATION

No. 122,493

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CASEY L. WILLS,
*Appellant*.


MEMORANDUM OPINION


Appeal from Sedgwick District Court; DAVID J. KAUFMAN, judge. Opinion filed November 5, 2021. Affirmed.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before MALONE, P.J., POWELL and CLINE, JJ.


PER CURIAM: Casey L. Wills pleaded guilty to two counts of aggravated sexual battery and one count of aggravated domestic battery and was sentenced by the district court to 62 months in prison. The district court also ordered Wills to pay restitution in the amount of $3,228.68 to one victim; $2,907.52 to the Kansas Crime Victims Compensation Board (Board); and $11,903.59 to the second victim. On appeal, Wills only challenges the restitution order as it pertains to the second victim. He does not challenge his convictions or sentence. For reasons we more fully explain below, we affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

For crimes committed in October and December 2017, Wills entered a *Brady* plea to two counts of aggravated sexual battery and one count of aggravated domestic battery. See *Brady v. United States*, 397 U.S. 742, 751, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970) (defendant's plea voluntary even if done with desire to suffer lesser penalty). The district court sentenced Wills to a controlling prison term of 62 months.

Wills agreed to pay restitution to one victim but not the other—M.H.—or to the Board. M.H. testified at the restitution hearing that because of Wills' sexual assault against her, she had missed work, been unable to perform her job duties, and received mental health treatment to cope with the emotional and posttraumatic stress she suffered after the sexual assault. The State also produced several exhibits detailing M.H.'s restitution claims.

After listening to M.H.'s testimony, the district court ordered Wills to pay M.H. $11,903.59 in restitution for the lost compensation from her part-time jobs, the costs of her mental health services, and for used sick and vacation leave from her full-time job. It also ordered Wills to reimburse the Board for payments it made to M.H. for part-time wages lost and some counseling costs but not for the remaining balance of what the Board had paid to M.H. because there was no proximate cause to the crime. The district court also did not award restitution for physical therapy and treatment for M.H.'s shoulder pain, finding no causal connection between the injury and Wills' crime of conviction. The total restitution award was $18,039.79.

Wills timely appeals.

I.      DID SUBSTANTIAL COMPETENT EVIDENCE SUPPORT THE RESTITUTION ORDER?

Wills' first two issues on appeal address the existence of substantial competent evidence to support the restitution order. First, Wills argues the State did not establish a causal link between his crime of conviction and M.H.'s alleged losses. Second, Wills asserts there is not substantial competent evidence M.H.'s use of her sick and vacation leave resulted in an actual loss.

*Standard of Review*

We review a district court's factual findings on the causal link between the crime committed and the victim's losses for substantial competent evidence. *State v. Arnett*, 307 Kan. 648, 653, 413 P.3d 787 (2018) (*Arnett I*). "'Substantial competent evidence is "such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion."' [Citations omitted.]" *State v. Doelz*, 309 Kan. 133, 138, 432 P.3d 669 (2019).

*Analysis*

Upon a finding of the defendant's guilt, the district court must conduct a hearing to establish restitution when requested by the victim. K.S.A. 2020 Supp. 22-3424(d)(1). When a defendant is sentenced to a term of imprisonment, "the court shall order the defendant to pay restitution, which shall include, but not be limited to, damage or loss caused by the defendant's crime." K.S.A. 2020 Supp. 21-6604(b)(1). A district court must base its restitution determination "'on reliable evidence which yields a defensible restitution figure.'" *State v. Hunziker*, 274 Kan. 655, 660, 56 P.3d 202 (2002). The appropriate restitution amount is what compensates the victim for the actual loss caused by the defendant's crime. Provided a causal connection exists and the district court's determination is based on reliable evidence that "'yields a defensible restitution figure,'"

we will uphold the district court's discretionary decision. *State v. Hall*, 297 Kan. 709, 713-14, 304 P.3d 677 (2013).

The causal link between a defendant's crime and the restitution must satisfy the traditional proximate cause elements: cause-in-fact and legal causation. "[T]hese elements limit a defendant's liability to '"those consequences that are probable according to ordinary and usual experience."'" *Arnett*, 307 Kan. at 654. Causation-in-fact requires proof that it is more likely than not the result would not have happened but for the defendant's conduct. 307 Kan. at 654.

> "Legal cause limits the defendant's liability even when his or her conduct was the cause-in-fact of a result by requiring that the defendant is only liable when it was foreseeable that the defendant's conduct might have created a risk of harm and the result of that conduct and any contributing causes were foreseeable. When causation is based on a chain of events, an intervening cause may absolve the defendant of liability. However, '[i]f the intervening cause is foreseen or might reasonably have been foreseen' by the defendant, his or her conduct may still be considered to have proximately caused the result. [Citation omitted.]" 307 Kan. at 655.

A. *Substantial competent evidence supported a causal link between Wills' crime of conviction and M.H.'s losses.*

Wills first claims the evidence did not support a causal link between M.H.'s claimed losses and his crime of conviction. Wills argues no evidence supported the State's three categories of claims: (1) lost wages for part-time jobs; (2) costs associated with hypnosis and therapy appointments; and (3) expended sick and vacation leave.

4

1. *Lost wages for part-time jobs*

M.H. worked part-time as a security officer at QuikTrip, Sowers Alternative High School, and Life Church and requested restitution for shifts she missed resulting from Wills' sexual assault.

Wills argues the Board provided "wage loss" to M.H. and there is no evidence the restitution awards by the Board did not cover the wage loss M.H. claimed from her part-time jobs. However, M.H. testified her wage loss claims were for her missed part-time shifts and she had not been fully compensated for these wage losses by payments from the Board. In fact, the record shows M.H.'s part-time wage loss claims were for different dates than those reimbursed by the Board.

Wills argues the State did not establish records of when M.H. worked her part-time jobs or that she would have worked those shifts but for Wills' actions. But Wills' argument ignores M.H.'s testimony. M.H. testified she started working at QuikTrip in late 2016 or early 2017 and worked there every other Thursday; she worked every Sunday for two or three years at Life Church; and she worked every Thursday afternoon at Sowers. M.H.'s testimony established a pattern of working these part-time jobs, which only stopped after Wills' sexual assault.

Wills further argues that M.H. admitted QuikTrip no longer hires police as security officers and did not provide a date when that stopped, making it unclear whether QuikTrip still employed officers during the dates for when M.H. was requesting lost wages. However, M.H. testified QuikTrip stopped hiring police officers the month before the restitution hearing, and she made no restitution claims for lost wages during that time. We conclude the State did establish when and how often M.H. worked her part-time jobs. M.H.'s testimony established the frequency of her shifts and supported the claimed number of shifts she missed subsequent to Wills' sexual assault.

Wills also argues the State failed to provide substantial competent evidence his sexual assault was the proximate cause of her missed shifts. M.H. testified she was unable to work these shifts because her full-time employer—the Wichita Police Department—placed her on light duty. Department policy did not permit police officers to work security jobs when on light duty, as M.H. had been.

Wills asserts it is unclear why M.H. missed her shifts, claiming she testified it was because she was placed on light duty but also that it was because of sleep, stress, and shoulder issues. We think Wills' argument misinterprets M.H.'s testimony. M.H. gave two reasons why she missed her part-time shifts: She was on light duty and was not allowed; other shifts she missed because of her posttraumatic stress and related issues such as stress and lack of sleep. Both reasons are related to Wills' sexual assault.

Wills also asserts M.H. did not explain how the light duty policy prevented her from working the part-time jobs and the State failed to introduce the policy into evidence. While it is true the State did not introduce the policy, M.H. did explain it. M.H. testified the policy did not allow her to work part-time jobs while she was on light duty. Moreover, before Wills sexually assaulted her, M.H. regularly worked three part-time shifts. After, M.H. was forced to stop when the Wichita Police Department placed her on light duty in response to the issues she was having after Wills' sexual assault.

While the district court found there was no causal connection between M.H.'s shoulder injury and Wills' sexual assault, substantial competent evidence supports the district court's finding that Wills' crime of conviction led to M.H. missing her part-time shifts and losing the income associated with those shifts.

2. *Costs associated with hypnosis and therapy appointments*

Wills makes a brief argument that there was not substantial evidence to support M.H.'s claims for restitution for costs associated with hypnosis and therapy appointments. M.H. testified the hypnosis services were for trauma because of the sexual assault. She also testified the therapy appointments were to cope with issues from Wills' sexual assault and she needed mental health counseling. Wills claims M.H. did not provide a specific explanation on what her issues were or how the mental health services treated her needs.

The suggestion that a sexual assault victim could not prove she needed mental health services to address her reactions to the sexual assault through her own testimony is unpersuasive. M.H. testified why she needed those mental health services: her posttraumatic stress, her inability to sleep, and her emotional stress. M.H. testified she would have to take the rest of the day off after dealing with a rape victim as a police officer. M.H. was unable to work on days she went to court or around the anniversary of the sexual assault. As for the hypnosis, it was recommended for her during her counseling sessions to help with her severe anxiety. The hypnosis was also to help M.H. sleep and lessen the impact of the emotional trauma.

Substantial competent evidence supports the State's position that the therapy and hypnosis were causally connected to Wills' crime of conviction.

3. *Expended sick and vacation leave*

M.H. also sought restitution for the sick and vacation leave she took after Wills' sexual assault. While Wills does not dispute the causal link between his crime and M.H.'s leave taken on January 2 and 3, 2018, he does argue against the remaining dates on which

M.H. took sick or vacation leave, arguing M.H. did not specify which of her various reasons for leave applied to a given date.

M.H. offered several explanations for why she took sick or vacation leave: (1) most of the leave was for court dates that triggered her, so she could not properly function; (2) in December, near the anniversary of the sexual assault; (3) for medical treatments; and (4) for when her posttraumatic stress was triggered. M.H. could not remember the exact reason she took sick or vacation leave on each day but testified she only took days off because of "either medical treatments, my PTS or the court would trigger me for sure."

While M.H. did not match each day with a specific reason she took that day off, she listed the reasons why she would have taken those days off. And she testified that she only took leave for those reasons. Each of M.H.'s reasons were directly tied to Wills' sexual assault. Either M.H. was emotionally triggered by an event relating to Wills' sexual assault on her or she had to take off for medical or mental health treatments that resulted from Wills' sexual assault. Substantial evidence supports a causal connection between Wills' crime of conviction and the sick and vacation leave M.H. took; thus, the State's restitution claims for lost vacation and sick leave are supported by the record.

B. *Substantial competent evidence supports the district court's grant of restitution for M.H.'s use of sick and vacation leave.*

Wills' second argument is that M.H.'s use of sick and vacation leave did not lead to an actual loss. Wills argues that just using leave, without an actual wage loss, does not constitute actual loss. Wills asserts M.H.'s testimony did not provide evidence that she exhausted her leave or intended to take those lost days, nor did it provide evidence of the extent her employer would have compensated her for those lost days.

8

Our research reveals only one unpublished Kansas Court of Appeals case addressing restitution for sick and vacation leave—*State v. Monzon*, No. 117,335, 2018 WL 1545785 (Kan. App. 2018) (unpublished opinion). The panel in *Monzon* relied on other states' opinions to reach its holding. 2018 WL 1545785, at *1-2. The panel quoted, with approval, the explanation in *People v. Perez*, No. 15CA1352, 2017 WL 1404231, at *3 (Colo. App. 2017). that "'expenditure of vacation and sick leave is a loss of employee benefits comparable to a victim's loss wages.'" 2018 WL 1545785, at *1. It also cited *In re K.F.*, 173 Cal. App. 4th 655, 666, 92 Cal. Rptr. 3d 784 (2009), which held that sick leave was compensable because, by using the sick leave, the victim would not have that leave available "'to cover future illnesses or for whatever other beneficial purpose the employer might allow.'" 2018 WL 1545785, at *1.

Following the logic of these and other out-of-state opinions, the *Monzon* panel held that, though the Kansas restitution statutes do not expressly list vacation leave as a compensable loss for the purposes of restitution, the statute is broad enough to encompass vacation time under "'damage or loss caused by the defendant's crime' and 'the actual loss suffered.'" 2018 WL 1545785, at *2. The panel held the loss of vacation time is an economic loss and a valid measure of actual loss for purposes of restitution. 2018 WL 1545785, at *2.

Wills argues sick and vacation leave lacks value until it is either used or cashed out upon resignation. But M.H. did just that—she used her vacation and sick leave. Nevertheless, Wills does not believe this is a compensable loss because M.H. did not testify she used all her leave or intended to take the leave for another reason. Whether M.H. used up her leave or intended to take it for another reason does not impact our analysis. She could no longer use the leave taken for something in the future. The leave she took is gone. And she can no longer be compensated for it when she ends her employment with the Wichita Police Department because the leave was used. M.H. used the leave she had earned as part of her employment because of Wills' sexual assault. As

9

the *Monzon* panel recognized, this was an economic loss akin to lost wages and compensable as restitution.

Wills also asserts M.H. failed to prove the extent to which the Wichita Police Department would have compensated her for her leave if she had not used it. But M.H. testified that the Wichita Police Department would compensate for any unused time. When pressed during cross-examination, M.H. testified she did not believe the Wichita Police Department had any caps for how much unused time it would compensate.

Substantial competent evidence supports the district court's awarding of restitution for the lost sick and vacation leave.

II.     ARE KANSAS' STATUTORY MECHANISMS FOR IMPOSING RESTITUTION UNCONSTITUTIONAL?

Wills' second principal argument against the district court's restitution order is that Kansas' statutory restitution scheme violates section 5 of the Kansas Constitution Bill of Rights and the Sixth Amendment to the United States Constitution. Specifically, Wills argues those constitutional provisions require a jury to make the restitution determination, not a judge, as happened here. The State counters that Wills failed to preserve this issue below and that because restitution is not considered punishment, any judicial findings on restitution do not run afoul of the Kansas or United States Constitution.

*Standard of Review*

The constitutionality of a statute is a legal question reviewed de novo. Although we usually presume a statute is constitutional and look for any reasonable way to interpret the statute to avoid a violation, such a presumption is inapplicable to

10

fundamental interests protected by the Kansas Constitution, such as the right to a trial by jury. See *Hillburn v. Enerpipe Ltd.*, 309 Kan. 1127, 1132-33, 442 P.3d 509 (2019).

*Preservation*

Wills did not raise his constitutional argument below. He acknowledges this but argues he meets an exception to the waiver rule.

Generally, constitutional issues not raised before the district court are deemed waived or abandoned. But an exception to the rule applies in cases where: (1) the newly asserted theory involves only a legal question arising on proved or admitted facts; (2) consideration of the theory is necessary to serve the ends of justice or prevent a denial of fundamental rights; (3) or the district court is right for the wrong reason. The decision to review a claim under one of the exceptions is a prudential one. Even if an exception supports review of a new claim, an appellate court is not obligated to do so. *State v. Gray*, 311 Kan. 167, 170, 459 P.3d 165 (2020).

Significantly, our Supreme Court very recently agreed to consider identical claims raised for the first time on appeal in *State v. Arnett*, 314 Kan.___, 2021 WL 4806611 (No. 112,572, filed October 15, 2021) (*Arnett II*). The court concluded that the right to a jury trial under both section 5 and the Sixth Amendment is a fundamental right justifying consideration of the issues under the second exception. 2021 WL 4806611, at *2. Thus, we will address the merits of Wills' constitutional challenge to the statutory restitution scheme.

*Analysis*

A.     *Jury Trial Right Under Section 5*

Wills first claims the statutes requiring a district judge to make the factual findings for restitution violates his section 5 right to have a jury determine the amount of damages or loss caused by his crimes. Wills argues that, at common law, crime victims could only seek compensation through civil actions for damages and, in such actions, defendants would be entitled to have a jury hear and decide such claims.

Section 5 of the Kansas Constitution Bill of Rights states:  "The right of trial by jury shall be inviolate." Moreover, our Supreme Court has held that section 5 "preserves the jury trial right as it historically existed at common law when our state's constitution came into existence." *Hilburn*, 309 Kan. at 1133. At common law, victims could recover damages caused by criminal acts through a civil suit in which the defendant had a right to a jury trial. *Arnett II*, 2021 WL 4806611, at * 4.

However, "[r]estitution ordered in criminal proceedings and civil damages are separate and independent remedies under Kansas Law." *State v. Applegate*, 266 Kan. 1072, 1078, 976 P.2d 936 (1999). A district court's order of restitution in a criminal action does not bar a victim from seeking damages in a civil action, nor is a district court prevented from ordering restitution when a victim has received compensation in a civil action. 266 Kan. at 1079; see also K.S.A. 60-4304(b) ("A judgment of restitution will not bar any subsequent civil remedy or recovery, but the amount of any restitution paid shall be set off against any subsequent civil recovery."). Given this, our Supreme Court in *Arnett II* agreed with a panel of our court in *State v. Robison*, 58 Kan. App. 2d 380, 386, 469 P.3d 83, *aff'd* 314 Kan.___, 2021 WL 4805294, at *9 (No. 120,903, filed October 15, 2021), that because criminal restitution is not a civil remedy, section 5 did not require a

jury to impose criminal restitution under K.S.A. 2017 Supp. 21-6604(b)(1) and K.S.A. 2017 Supp. 21-6607(c)(2). *Arnett II*, 2021 WL 4806611, at *5.

Nevertheless, our Supreme Court struck down portions of our restitution statutes which convert restitution orders into enforceable civil judgments, holding that prior to the enactment of these statutes, "criminal restitution was not a legal obligation equivalent to a civil judgment. " 2021 WL 4806611, at *7. The court concluded that because the district court decides the amount of loss to the victim proximately caused by the defendant's crime, such an award under the restitution statutes becomes an enforceable civil judgment and thus implicates section 5. 2021 WL 4806611, at *7. Accordingly, the Supreme Court held K.S.A. 60-4301 (restitution order to be enforced as a civil judgment), K.S.A. 60-4302 (notice requirements when restitution order filed as civil judgment), K.S.A. 60-4303 (docket fee when filing restitution orders as civil judgments), K.S.A. 2020 Supp. 21-6604(b)(2) (criminal restitution order enforceable like other civil judgments), and the last sentence of K.S.A. 2020 Supp. 22-3424(d)(1) (any court-ordered restitution to be paid to victim or victim's family to be enforced as judgment pursuant to K.S.A. 60-4301 through K.S.A. 60-4304) as unconstitutional. 2021 WL 4806611, at *8.

Thus, Wills' restitution order does not violate section 5, although it cannot be enforced as a civil judgment. See *State v. Owens*, 314 Kan.___, 2021 WL 4806298, at *21 (No. 120,753, filed October 15, 2021) (restitution order constitutionally firm but defendant not subject to civil judgment unless obtained separately through civil cause of action).

B.      *Jury Trial Right Under the Sixth Amendment*

Wills also argues the restitution scheme violates his right to a jury under the Sixth Amendment according to *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d (2000). In *Apprendi*, the United States Supreme Court held that "[o]ther than the

fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Wills also cites *Alleyne v. United States*, 570 U.S. 99, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013), to support his argument that any facts which increase a mandatory minimum penalty must also be decided by a jury.

Our Supreme Court also resolved these questions in *Arnett II*. The court noted with approval that claims similar to Wills' had been rejected by the federal courts and two panels of our court on the alternative grounds that restitution was either not punishment or that the restitution statutes do not specify a maximum award, thereby not running afoul of *Apprendi*. *Arnett II*, 2021 WL 4806611, at *3; see *Robison*, 58 Kan. App. 2d at 389-90; *State v. Huff*, 50 Kan. App. 2d 1094, 1100, 336 P.3d 897 (2014). The court further noted that as the United States Supreme Court has allowed such lower federal court rulings to stand, it would not disturb any prior holdings that restitution does not implicate a defendant's Sixth Amendment right to a jury. *Arnett II*, 2021 WL 4806611, at *3. Accordingly, the Kansas restitution statutes and Wills' restitution order do not violate the Sixth Amendment.

Affirmed.